IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RECOR MEDICAL, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>RECORA, INC.,<br><br>    Defendant. | Civil Action No. 22-01118-RGA |

## MEMORANDUM ORDER

Before me is Plaintiff Recor's motion to file an amended complaint. (D.I. 87). The proposed amended complaint is attached to the motion. (D.I. 87-1). I have considered the parties' briefing. (D.I. 88, 97, 98). For the reasons set forth below, the motion is GRANTED.

### I. BACKGROUND

Plaintiff Recor is a "medical research and device company" that "develops and manufactures therapies and equipment for the treatment of cardiorenal conditions, including the treatment of hypertension, and reduction of cardiovascular disease, kidney disease, and stroke[.]" (D.I. 88 at 2; D.I. 87-1 at 2 ¶ 8). Because Plaintiff's technology was recently approved to treat hypertension, Plaintiff is now "developing an app for use by patients and their doctors to track patient recovery, among other things." (D.I. 87-1 at 16 ¶ 63). Plaintiff is the owner of United States Trademark Application Serial Number 90/471,601 and asserts common law rights and trade name rights in the RECOR and RECOR MEDICAL names and marks. (*Id.* at 3, ¶¶ 11–12).

Defendant Recora offers a "home-based cardiac rehabilitation program administered through a downloadable app or web portal." (D.I. 88 at 2; D.I. 87-1 at 4 ¶ 18). Defendant uses

1

and has applied to register the trademark RECORA in connection with this product. (D.I. 87-1 at 4 ¶¶ 18–19).

Plaintiff filed a complaint against Defendant in August 2022 alleging federal trademark infringement under 15 U.S.C. § 1114, false designation of origin and unfair competition under 15 U.S.C. § 1125(a), and analogous violations of Delaware law. (D.I. 1 at 5–9). Plaintiff amended its complaint as of right in October 2022 (D.I. 6), and without opposition for a second time in October 2023 (D.I. 42; D.I. 44). On March 1, 2024, Plaintiff filed this motion to amend its complaint a third time to include a federal Lanham Act false advertising claim and a state false advertising claim under the Delaware Deceptive Trade Practices Act ("DTPA"). (D.I. 87-1 at 23–25); 15 U.S.C. § 1125(a)(1)(B); 6 Del. C. § 2532. The operative deadline to amend pleadings was December 22, 2023. (D.I. 59). The schedule is currently vacated pending resolution of this motion. (D.I. 101).

Plaintiff states that it "served document requests and interrogatories seeking substantiation of Recora's Marketing Statements on October 25, 2023, and December 13, 2023, respectively." (D.I. 88 at 3). Plaintiff argues the responses Defendant provided were incomplete, leading Plaintiff to depose Dr. Ed Wu—the co-founder and Chief Operating Officer of Recora and Recora's Rule 30(b)(6) designee—on January 11, 2024. (*Id.* at 1, 3–4). Plaintiff notes that Defendant produced "more than 12,500 out of more than 13,500 documents" after the "substantial completion" for document production deadline of December 8, 2023. (*Id.* at 4 n.1; *see* D.I. 59). Of those 12,500, "more than 6,000 documents were produced after the [December 22, 2023] deadline to amend." (D.I. 88 at 4 n.1).

Plaintiff states that it first learned of a "repository of patient data" called the "metabase" during Dr. Wu's deposition on January 11, 2024. (*Id.* at 4). On January 11 and 12, 2024,

2

Plaintiff requested raw patient data from this "metabase" to substantiate Defendant's marketing claims. The last day of fact discovery was January 12, 2024. (*Id.*; D.I. 59). Defendant produced documents, but Plaintiff argues these too were incomplete and "failed to substantiate the Marketing Statements." (D.I. 88 at 4–5). Plaintiff conducted a second deposition of Dr. Wu on February 6, 2024, at which Plaintiff learned that the marketing statements were based on data from "only six patients." (*Id.* at 5). Additionally, Dr. Wu admitted that, despite claims that "86.3% of Recora patients" with high blood pressure "experienced improvements" "through diet and exercise," the underlying data indicated that "only 73.56% of Recora patients" experienced such improvements. (*Id.*).

After discussion between the parties, on February 16, 2024, Defendant produced documents necessary to corroborate certain of Defendant's statements and revised a response to an interrogatory. (*Id.* at 6). The parties met and conferred on February 21, 2024, and Defendant did not consent to Plaintiff's request to amend its complaint to include false advertising claims. (*Id.*). Plaintiff filed this motion on March 1, 2024. (D.I. 87).

## II. LEGAL STANDARD

### A. Amendment past the scheduling deadline

"[W]hen a party moves to amend . . . after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols.*, 970 F.3d at 319.

"[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence." *Id.*

### B. Leave to amend under Rule 15(a)(2)

Rule 15(a)(2) states that, apart from amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Third Circuit has construed Rule 15 liberally, instructing that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)) (emphasis omitted) (cleaned up).

"Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend. Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (internal quotation and citation omitted). The futility analysis follows the standard that applies to a motion under Rule 12(b)(6)—namely the *Twombly/Iqbal* pleading standard. *Id.* at 175–77; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). The "Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff." *Great W. Mining & Min.*, 615 F.3d at 175 (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007)).

## III.   DISCUSSION

### A. Good Cause

Plaintiff argues that it acted diligently and that the delay in amending this complaint was caused by "late productions; incomplete data, most of which was produced after the close of fact discovery; an inaccurate interrogatory response, the answer to which Recora changed after fact discovery; and the need to depose Dr. Wu twice." (D.I. 88 at 8). Notably, Plaintiff argues that "the documents and testimony relevant to the new false advertising claims were all obtained after [the deadline to amend on] December 22, 2023." (*Id.* at 9). Plaintiff also contends that some courts require a heightened pleading standard for false advertising and therefore Plaintiff "deemed it necessary to obtain the relevant factual evidence to meet not only Rule 8, but also the so-called 'intermediate pleading standard' and Rule 9(b)." (*Id.*).

Defendant argues that this is a "situation of Plaintiff's own making" because Plaintiff knew of Defendant's "press releases and public-facing web materials" featuring its market statements "from the inception of this case." (D.I. 97 at 5). Defendant argues that Plaintiff only requested information relevant to the new claims through interrogatories served on December 13, 2023—"just days before the deadline for amending pleadings." (*Id.* at 4). Plaintiff counters that it served document requests that "mirrored" the interrogatories in October—two months prior to the deadline to amend. (D.I. 98 at 1).

Plaintiff served targeted discovery requests for documents to substantiate Defendant's marketing claims in October 2023 before the deadline to amend pleadings. (*Id.*). Defendant could have provided the requested patient data at this time—and ultimately did provide it in February 2024—but instead responded with incomplete information. It appears that only after Plaintiff discovered the existence of the "metabase" by deposing Dr. Wu did Defendant

ultimately comply. Plaintiff could not assert a claim of false advertising without evidence that the advertising was false. The delay in amending the complaint derived from Defendant's actions, not from Plaintiff's lack of diligence. I find that Plaintiff has good cause to amend its complaint.

## B. Futility[1]

Under Rule 15(a), a court may deny leave to amend a complaint if the amendment would be futile. *Great W. Mining & Min.*, 615 F.3d at 175. "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (internal quotation and citation omitted).

### 1. Lanham Act False Advertising Claim[2]

The Lanham Act states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by a person who believes that he or she is or is likely to be damaged by such act.

---

[1] Defendant does not argue undue or substantial prejudice, bad faith or dilatory motive, or repeated failure to cure deficiency. And as discussed above, there was no "truly undue or unexplained delay." *Long*, 393 F.3d at 400.

[2] Defendant argues that Plaintiff has failed to satisfy the intermediate pleading standard for 15 U.S.C. § 1125(a)(1)(B). (D.I. 97 at 11). I previously applied the non-heightened Rule 8 pleading standard to Lanham Act claims. *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *5 (D. Del. May 28, 2021). I explained there why I do not think there is an applicable intermediate pleading standard. "I do not think that applying a pre-*Twombly/Iqbal* heightened pleading standard is appropriate." *Id.* Defendant does not argue that I should be applying Rule 9(b)'s more rigorous standard. I therefore do not consider that possibility.

15 U.S.C. § 1125(a)(1)(B).

To assert a claim of false advertising under section 1125(a)(1)(B), a plaintiff must first have what is sometimes called "statutory standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). The first requirement for statutory standing is that the plaintiff's interests fall within the "zone of interests" of the statute. *Id.* at 129. The second requirement is that the plaintiff's injuries are "proximately caused by violations of the statute." *Id.* at 132. Taken together, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 140.

### a. Zone of Interests

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–132. Plaintiff is a commercial actor and alleges, "Recora's false and misleading claims will likely cause RECOR to suffer a loss of goodwill, damage to its business reputation, and lost sales and/or a withholding of trade." (D.I. 87-1 at 23 ¶ 107). Defendant does not dispute that Plaintiff's injuries fall within the zone of interests "at least under a 12(b)(6) analysis." (D.I. 97 at 7 n.2).

I find that Plaintiff's claim falls within the zone of interests of section 1125(a)(1)(B).

### b. Proximate Causation

The proximate cause requirement "bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 572 U.S. at 133. When suing under section 1125(a)(1)(B), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; . . . that occurs when deception of

7

consumers causes them to withhold trade from the plaintiff." *Id.* "[T]he intervening step of consumer deception is not fatal to the showing of proximate causation required" for a Lanham Act false advertising claim. *Id.*

Defendant denies that the parties are in a competitive relationship, either directly or indirectly, characterizing Plaintiff's product as "an intra-catheter renal denervation procedure" and Defendant's product as "a virtual cardiovascular rehabilitation service." (D.I. 97 at 8). Defendant argues that the two products are only related "at the broadest level of abstraction" because they "fall within the umbrella of cardiovascular medicine." (*Id.* at 1).

Plaintiff argues that the Supreme Court's *Lexmark* decision "did not limit false advertising actions solely to competitors or targets of disparaging statements that lose sales to the speaker." (D.I. 98 at 3). Plaintiff contends that Defendant reads *Lexmark* too narrowly and that "[t]he Supreme Court . . . left 'room for other pathways to proximate cause (i.e., if there was the prospect of likely *future* injury to sales or a plaintiff's economic interests).'" (*Id.* (quoting *CareDx, Inc. v. Natera, Inc.*, 2019 WL 7037799, at *5 (D. Del. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 401773 (D. Del. Jan. 24, 2020) (emphasis in original))). Regardless, Plaintiff argues that the parties are in a competitive relationship because they both operate in the same industry, serve patients with high blood pressure, market to the same types of customers, and "track their patients' recovery and blood pressure through a mobile or web-based application." (*Id.* at 4).

Plaintiff alleges that both Plaintiff and Defendant market their products to similar populations of customers looking for hypertension treatment, including patients, health care providers, health care systems, and insurance companies. (D.I. 87-1 at 16 ¶ 63). Both parties treat hypertension, and both interact with, or plan to interact with, customers using a mobile app.

(*Id.* at 4–6, 16 ¶¶ 18, 24, 32, 63). I find that the amended complaint alleges Plaintiff and Defendant are in a competitive relationship sufficient to bring them under the ambit of Lanham Act section 1125(a)(1)(B).

Defendant argues that "none of the alleged statements concern Plaintiff, its product, or company, or component affiliated with Plaintiff" and Plaintiff has "failed to demonstrate proximate (or any) causation" linking Defendant's statements to Plaintiff's harm. (D.I. 97 at 9). Defendant also characterizes Plaintiff's theory of liability as "nothing more than a repackaged false association claim" because "injury under the Plaintiff's theory derives from customer confusion from names and not the truth or falsity of the advertisement[.]" (*Id.* at 10 (citing *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 227 (3d. Cir. 2017))).

Plaintiff argues that *Parks* is inapposite. Unlike *Parks*, in which "the plaintiff failed to allege any cognizable false statements of fact separate from the trademark itself," Plaintiff asserts that "the alleged false and misleading statements" in this case "are factual assertions about the quality and effectiveness of Recora's goods and services[.]" (D.I. 98 at 5–6). Plaintiff argues the closeness of the parties' marks "increases the likelihood of injury to Recor's reputation," but notes that its amended complaint alleges that Plaintiff is "likely to suffer economic harm through lost sales in the face of a competitor . . . [who] is making false statements about its ability to lower blood pressure." (*Id.* at 6; *see* D.I. 87-1 at 16–17, 23 ¶¶ 61–66, 104–06).

I agree with Plaintiff. Though Plaintiff alleges reputational harm due to the similarity of the parties' names in conjunction with Defendant's false or misleading marketing statements, Plaintiff also alleges that the false or misleading marketing statements themselves would be "likely to influence purchasing decisions" of Recora's customers. (D.I. 87-1 at 23 ¶¶ 106–07). Because Plaintiff's and Defendant's customers overlap, this too could plausibly cause Plaintiff

9

harm through lost sales. Unlike *Parks*, Plaintiff's theory of harm is not solely dependent upon the similarity of the parties' names and a customer's "pre-existing association between" a party's mark and certain types or qualities of products. *Parks*, 863 F.3d at 227. The alleged harm here instead comes from the marketing statements themselves.

I find it plausible that Plaintiff's harms were proximately caused by Defendant's false or misleading statements. Accordingly, Plaintiff has statutory standing under the Lanham Act. Plaintiff's assertion of a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) is not futile.

### 2. DTPA Claim

Defendant argues that Plaintiff lacks statutory standing for its DTPA false advertising claim because there is neither a "horizontal relationship between the parties" nor a "cognizable injury to Plaintiff's business or trade interest" sufficient to create the "causal nexus" required by the DTPA. (D.I. 97 at 16–17).

"[T]he DTPA addresses unreasonable or unfair interference with the 'horizontal' relationships between various business interests." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993). A "horizontal business relationship" "exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Livery Coach Sols., L.L.C. v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017) (citation omitted). Conversely, a "vertical" relationship is one between a buyer/consumer and a producer/seller. *Grand Ventures*, 632 A.2d at 70. Delaware law does not require parties to be in direct competition for a plaintiff to have standing to sue under the DTPA. 6 Del. C. § 2532(b) ("In order to prevail in an action under this chapter, a complainant need not prove competition between the parties[.]"); *Emerson Elec. Co. v. Emerson Quiet Kool Co.*, 2019 WL 1397244, at *4 (D. Del Mar. 28, 2019).

Plaintiff and Defendant are "on the same market level"—they both market and sell to patients with hypertension and to health care providers. *Livery Coach Sols.*, 245 F. Supp. 3d at 648; (D.I. 87-1 at 16 ¶ 63). As discussed above, Plaintiff has also alleged a "cognizable injury" to its business interest because Defendant is a "competitor . . . [who] is making false statements about its ability to lower blood pressure," which Plaintiff alleges in its complaint "are likely to influence purchasing decisions." (D.I. 98 at 6; D.I. 87-1 at 17, 23 ¶¶ 65–66, 104–07). As discussed above, Plaintiff has also pleaded facts sufficient to establish a causal nexus between Plaintiff's harm due to Defendant's false or misleading marketing statements. *See supra* Section B(1)(b); *Grand Ventures*, 632 A.2d 63, 70 ("[A] litigant has standing under the DTPA only when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another.").

I find that Plaintiff has statutory standing under the DTPA. Plaintiff's claim is not futile. Accordingly, Plaintiff's motion to file an amended complaint (D.I. 87) is GRANTED.

IT IS SO ORDERED.

Entered this 9th day of April, 2025

_____
United States District Judge